# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00443-CV

### L. R., Appellant

### v.

### Texas Department of Family and Protective Services, Appellee

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT
### NO. C-13-0052-CPS, HONORABLE JAY K. WEATHERBY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The trial court rendered a judgment terminating L.R.'s parental rights to her four children, L.M.S., A.R.S., C.N.S., and N.N.S. On appeal, L.R. challenges the legal and factual sufficiency of the evidence supporting the trial court's findings that (1) the statutory grounds for termination were satisfied, and (2) termination of L.R.'s parental rights was in the children's best interests. We will affirm.

## BACKGROUND

L.R. and the children's father, who never married, lived together and had four children, N.N.S., born in 2002, C.N.S., born in 2003, A.R.S., born in 2004, and L.M.S., born in 2005. When L.M.S. was two months old, L.R. left the children with their father and did not attempt to see them for at least six years. The children were removed from their father's care in

2013 after he tested positive for amphetamines and methamphetamines.[1]  At that time, L.R. was still not living with the children and had not lived with them for several years.  L.R. first visited the children in September 2013, after the children had been placed in the Department's custody.  She had no other visits with them.  The children expressed their feelings that they did not want to see their mother because they were upset that she had not had contact with them for approximately seven years.  A.R.S. did, however, state afterward—when he was alone with a Department caseworker—that he did want to have some contact with L.R.  L.R. had been incarcerated for two of the previous seven years but had been released and was then living with her husband.

L.R. submitted to a drug test, which was negative, but the Department informed her that she needed to set up a substance-abuse assessment because of a history of drug use, including during the time she was living with the children's father.  The Department also testified that it was difficult to maintain contact with L.R. and that she failed to notify the Department when she would come to San Angelo, where the children were living with their paternal grandmother and uncle.  L.R. did participate in some counseling but told the Department caseworker that she was unable to comply with the service plan.  The children's father testified that he had not had any contact with L.R. for seven years.  He testified that when L.M.S. was two months old, L.R. accused him of family violence and left him and the children while he was serving a three-month sentence in the county jail.  He also testified that at that time L.R. had an open case with the Department.

Although notified of the trial date, L.R. did not attend.  The Department introduced into evidence a "family service plan" it had devised for L.R.  The contents of the plan document

---

[1] The drug test was requested after the Department investigated a report alleging neglectful supervision of the children's cousins, which led the Department to question the children's home environment and care.

include interview notes revealing that in August 2013 L.R. expressed her desire to be reunited with the children, live a better life, and provide for them. She told the caseworker she was trying to go back to school to get her GED and was currently employed at a restaurant. She is currently married, lives with her sister-in-law, and relies on her husband, mother, and in-laws for support and transportation. The case facilitator noted that L.R. professed not to know why the Department was involved, but she believed it wanted a better environment for the children. L.R. stated that she smoked marijuana in high school and used methamphetamines when she was 21 years old. She went to prison for two years for the offense of theft-by-check and was released in May 2013. She stated that she only used methampetamines twice and denied that her husband uses drugs. The children had not met L.R.'s husband but had spoken to him on the phone. L.R. reported to the case facilitator that when she was with the children's father he beat her and that they both used methamphetamines. She stated that the children's father hit her and in 2006 tried to kill her with a knife; according to her, the Department has received allegations that he physically abused one of his children from a different relationship.

The service-plan documents report that L.R. used drugs one week before a court hearing, had a short period of not using drugs, and was unwilling to participate in an in-patient drug therapy program. L.R. also missed opportunities to visit her children even after she returned to their lives after her six-to-seven year absence. According to the case facilitator, the children do not view L.R. as a parent and do not call her "mom."

The children are currently placed with their paternal grandmother and uncle; they are doing well in school and are happy and well-adjusted. Several witnesses testified that their father was a good father and took good care of them but had been arrested for drug use and was

3

currently incarcerated for possession of a controlled substance. The guardian ad litem testified that he believed L.R.'s parental rights should be terminated and that the children should remain with their grandmother and uncle.

## DISCUSSION

To terminate the parent-child relationship, there must be clear and convincing evidence that the parent committed one or more of the acts specifically set forth in Family Code section 161.001(1) and that termination is in the children's best interest. *See* Tex. Fam. Code §§ 161.001(1), (2), .206a. Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. Due process demands this heightened standard because of the fundamental interests at issue. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

In this case, the trial court found clear and convincing evidence that L.R. (1) knowingly placed or allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being, a violation of section 161.001(1)(D) of the Family Code, and (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being, a violation of section 161.001(1)(E) of the Family Code. *See* Tex. Fam. Code § 161.001(1)(D), (E).[2] The trial court also found that termination of the parent-child relationship was in the children's best interests. *Id.* § 161.001(2).

---

[2] The trial court also found that L.R. failed to comply with the provisions of a court order setting forth the requirements for reunification. *See* Tex. Fam. Code § 161.001(1)(O).

Only one ground under section 161.001(1) is necessary to support a judgment in a parental-rights termination case. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, when termination is based on multiple grounds under section 161.001(1), as it was here, we must affirm the termination order if the evidence is sufficient to support any one of the grounds found by the district court and is also sufficient to support the best-interest finding. *Id.*

In reviewing the legal sufficiency of the evidence to support a termination finding, we look at all the evidence in the light most favorable to the termination finding in order to determine whether a reasonable trier of fact could have formed a firm conviction or belief about the truth of the matter on which the Department bears the burden of proof. *In re J.L.*, 163 S.W.3d 79, 84-85 (Tex. 2005); *In re J.F.C.*, 96 S.W.3d at 266. We do not, however, disregard undisputed evidence that does not support the finding. *In re J.F.C.*, 96 S.W.3d at 266. In reviewing the factual sufficiency of the evidence we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* (citing *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). We must consider the undisputed evidence and determine whether a reasonable factfinder could have reasonably resolved that evidence in favor of the finding. *Id.* If the disputed evidence is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id.*

There is a strong presumption that the best interest of a child will be served by preserving the parent-child relationship. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). The focus is on the best interest of the child, not on the best interest of the parent. *See A.L. v. Texas Dep't of Family & Protective Servs.*, No. 03-13-00610-CV, 2014 WL 641456, at \*3 (Tex. App.—Austin Feb. 13, 2014, no pet.) (mem. op.). However, parental rights may not be

5

terminated merely because a child might be better off living elsewhere. *Id.* The factfinder may consider a number of factors in determining the best interest of the child. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The Department need not prove all of the factors listed in *Holley* as a "condition precedent" to termination, and the absence of some factors does not bar the factfinder from finding by clear and convincing evidence that termination is in a child's best interest, especially when there is undisputed evidence that the parental relationship endangered the child. *In re C.H.*, 89 S.W.3d at 27. While no one factor is controlling, analysis of a single factor may be adequate in a particular factual situation to support a finding that termination is in the best interest of the child. *Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 222 (Tex. App.—Austin 2013, no pet.).

The trial court found clear and convincing evidence that L.R. knowingly placed or allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being. *See* Tex. Fam. Code § 161.001(1)(D). In her first issue, L.R. challenges the sufficiency of the evidence supporting this finding. As used in the termination-of-parental-rights statute, endangerment means exposing a child to loss or injury or jeopardizing the child's emotional or physical well-being. *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The statute does not require that the endangering conduct necessarily be directed at the child or cause physical harm; rather, it is sufficient if the conduct endangers the child's emotional well-being. *Id.* Subsection (D) concerns the child's living environment, rather than the parent's conduct, though parental conduct is relevant to the child's environment. *In re S.M.L.*, 171 S.W.3d 472, (Tex. App.—Houston [14th Dist.] 2005, no pet.); *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). The parent must be aware of the potential for danger to the

6

child in such an environment and must have disregarded that risk. *In re C.L.C.*, 119 S.W.3d 382, 392 (Tex. App.—Tyler 2003, no pet.). It is not necessary that the child actually suffers injury; rather, it is sufficient that the child's well-being be jeopardized. *Boyd*, 727 S.W.2d at 533. Living conditions that are merely "less-than-ideal" do not support a finding under this section. *Id.*

As set forth above, it is undisputed that L.R. left her children when they were very young, when L.M.S. was essentially a newborn baby, and did not make contact with them for six or seven years. There was evidence to support the conclusion that L.R. left the children with a person she knew used drugs and committed serious domestic violence against her. There was no evidence that L.R. made any attempt to contact the children during her six-to-seven-year absence from their lives. This conduct could reasonably be found to have endangered the children's emotional well-being as well as their physical well-being. The evidence was therefore legally and factually sufficient to support the trial court's endangerment finding. We overrule L.R.'s first issue. Having concluded that the evidence is sufficient as to this termination ground, we need not address L.R.'s second and third issues challenging the sufficiency of the evidence supporting the findings as to the other grounds for termination. *See In re A.V.*, 113 S.W.3d at 362.

In her fourth issue, L.R. contends the evidence is legally and factually insufficient to support a finding that terminating her parental rights was in the children's best interests. Once the trial court finds parental conduct sufficient to warrant termination, it must also determine if termination is in the child's best interest. *See* Tex. Fam. Code § 161.001(2). Factors to consider in determining the best interest of the child include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the parent seeking custody; (5) the programs

available to assist the parent seeking custody; (6) the plans for the child by the parent or agency seeking custody; (7) the stability of the home or the proposed placement; (8) any acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72.

Each of the children stated that they did not want to be returned to L.R. Although A.R.S. expressed a desire to have some contact with her, none of the children expressed a desire to be permanently reunited with L.R. There was testimony that each of the four children was doing well while living with their paternal grandmother and uncle. Their paternal grandmother expressed a desire to adopt the children if they were not reunited with their mother or father. There was no evidence regarding L.R.'s ability to maintain a stable living situation for her children. L.R. is currently residing at the home of her husband's relatives and depends on them for support and transportation. L.R. did not appear at trial and thus did not provide any information regarding her future plans for the children. With respect to the propriety of the parent-child relationship, the evidence at trial indicated that aside from one visit after the Department removed the children from their father, L.R. has had no relationship with the children since their infancy. Although her reason for leaving their father was his alleged violence toward her, L.R. made no effort to explain why she did not take the children with her or try to secure a safe place for them. A reasonable trier of fact could have formed a firm belief or conviction that, if returned to L.R., the children would be subjected to an unstable and unfamiliar living situation that would compromise their physical and emotional needs and, therefore, that termination was in the children's best interests. We overrule L.R.'s fourth issue.

**CONCLUSION**

Having concluded that sufficient evidence supports the trial court's findings that there was a ground for terminating L.R.'s parental rights to L.M.S., A.R.S., C.N.S., and N.N.S. and that termination of those rights was in the children's best interests, we affirm the trial court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed:  December 10, 2014